IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:18-CV-4-FL

| | | |
|---|---|---|
| CHARLES S. MOTOSKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NATIONSTAR MORTGAGE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule 12(b)(6) for failure to state a claim and pursuant to Rule 8(a) for failure to provide a short, plain statement of the claim. (DE 7). The motion has been fully briefed, and in this posture, issues raised are ripe for ruling. For the following reasons, defendant's motion is granted.

## STATEMENT OF THE CASE

Pro se plaintiff commenced this action January 12, 2018 by filing verified complaint in the North Carolina Superior Court of Dare County. Plaintiff's claims concern a real estate construction loan issued to plaintiff for a principal sum of $296,250.00, secured by deed of trust on property owned by plaintiff in Dare County, North Carolina, located at 44 Juniper Trail, Southern Shores, North Carolina, 27949. Plaintiff asserts the following causes of action: 1) wrongful initiation of foreclosure proceedings, 2) wrongful refusal to accept offer of tender, 3) breach of contract, and 4) failure to provide 45-day pre-foreclosure notice. Plaintiff seeks monetary damages and to enjoin defendant from proceeding further with foreclosure action in Dare County, North Carolina, designated 13-SP-229. Defendant filed notice of removal to this court on February 2, 2018, and on

February 8, 2018, filed the instant motion to dismiss, asserting all claims are barred by the relevant statute of limitations and all claims fail as a matter of law and should be dismissed pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

## STATEMENT OF THE FACTS

The relevant facts alleged in plaintiff's verified complaint may be summarized as follows.

In March 2003, plaintiff executed a $296,250.00 promissory note in favor of Countrywide Home Loans, Inc, which note was secured by a deed of trust on property located at 44 Juniper Trail, Southern Shores (Dare County), North Carolina, 27949, property currently owned by plaintiff. (Compl. (DE 1-1) ¶¶ 2, 4-5). On April 17, 2013, following plaintiff's default under the loan in January 2013, "Nationstar Mortgage, LLC" mailed to plaintiff "formal notice . . . that you are in default," which gave notice of impending foreclosure proceedings, provided instructions on reinstating the loan, and explained potential options to avoid foreclosure. (Compl. (DE 1-1) ¶ 10; Ex. 14, pgs. 80-82).

On May 23, 2013, Countrywide Home Loans, Inc. assigned plaintiff's deed of trust to defendant, Nationstar Mortgage, LLC. (Compl. (DE 1-1) ¶¶ 6-7; Ex. 14, pg. 77).

On June 17, 2013, defendant sent to plaintiff a trial loan modification offer (the "June 2013 trial plan") providing that if plaintiff made three trial payments of $1,546.78, and otherwise submitted all necessary information and documentation, plaintiff's "mortgage would then be reviewed to be permanently modified." (Compl. (DE 1-1) ¶ 16; Ex. 2, pg. 17). The June 2013 trial plan further stated that defendant would not "proceed to foreclosure sale during the trial period." (Compl. (DE 1-1) ¶¶ 18-20; Ex. 2, pg. 18). Plaintiff made the first payment under the June 2013 trial plan by money transfer at 1:02 p.m. on June 27, 2013. (Compl. (DE 1-1) ¶ 17; Ex. 1, pg. 16).

2

Defendant filed action for foreclosure in Dare County Superior Court on July 1, 2013, case number 13-SP-229. (Compl. (DE 1-1) ¶ 19). On July 5, 2013, counsel cancelled the foreclosure hearing that had been set due to "Loss Mitigation." (See DE 8-5 (July 5, 2013 calendar request)).[1]

Thereafter, plaintiff alleges he complied with the terms of the June 2013 trial plan, but plaintiff's mortgage was not modified. (Compl. (DE1-1) ¶ 19). Plaintiff received a pre-foreclosure notice mailed to plaintiff on October 7, 2013 from Trustee Services of Carolina, LLC c/o Brock and Scott, PLLC, informing plaintiff that "Trustee Services of Carolina, LLC has been asked as Substitute Trustee to initiate foreclosure proceedings to foreclose the mortgage on your property." (Compl. (DE 1-1) ¶ 45; Ex. 15, pg. 85).

On February 7, 2014, at a hearing that was held before the Dare County Clerk of Superior Court, and over the course of the next few weeks, plaintiff attempted to tender to defendant $14,964.17 to reinstate the loan, which plaintiff alleges was "more than sufficient to bring the arrearages up to date and to restore the loan to non-delinquent status." (Compl. (DE1-1) ¶¶ 22, 25-36; Ex. 6, pgs. 24-27; Ex. 7, pgs. 28-34). At the hearing, lender's agents refused to accept plaintiff's funds, "because they did not know the correct amount of arrearages"; plaintiff was told during the hearing that defendant's agent Claire Collins, Esq. ("Collins"), and Melissa Westmoreland, an attorney with Brock and Scott, PLLC, would ascertain the correct amount within one week. (Id. ¶¶ 26, 31). Plaintiff, in the following week, additionally contacted via email and

---

[1] The records from the Dare County foreclosure proceedings, including orders and documents filed therein, may be judicially notice by this court in reviewing a motion under Rule 12(b)(6). See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) ("in reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record"); Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 778 (E.D.N.C. 2011) (taking "judicial notice of the special proceedings filings by [the defendants] in the underlying foreclosure action").

USPS, Amanda Caldwell, defendant's representative, trying to ascertain the correct amount, in addition to multiple times trying to ascertain the information from Collins via email. (Id. ¶¶ 32-36). Ultimately, defendant "failed to provide a written statement to [plaintiff] within [10] days of receipt of a written request detailing the then current balance due on the loan" and failed to provide "a detailed statement that identifies and itemizes all fees and charges assessed." (Id. ¶ 37).

On March 11, 2014, defendant sent to plaintiff another trial loan modification offer (the "March 2014 trial plan"). (Compl. (DE1-1) ¶ 39; Ex. 11, pg. 42-45). The first page of the March 2014 trial plan includes the following information:

> Dear CHARLES S. MOTOSKO:
>
> We want to continue to work with you to modify the mortgage and help make the payments more affordable. Based on a careful review of your Mortgage account, we are offering you an opportunity to enter into a Trial Period Plan for a mortgage modification. This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important that you read this information in its entirety so that you completely understand the actions you need to take to successfully complete the Trial Period Plan to permanently modify your mortgage. . . .
>
> **Proposed Modification Terms**
> If you successfully complete the Trial Period Plan by making the required payments, you will receive a modification with an <u>interest rate of 2.000 %</u>, which will be fixed for 40 years from the date the modification is effective. If we determine that the unpaid balance of your Mortgage is more than 115% of the value of your home, you will be eligible to have up to 30% of your principal balance deferred, and the deferred amount will not be subject to any interest rate charges. Moreover, the deferred principal amount will not be due and payable until the earlier of (a) the end of the 40-year term of the modified mortgage, (b) any sale or transfer of your interest in the property, or (c) a refinance of your mortgage loan.

(Compl. (DE1-1), Ex. 11, pg. 42 (underline emphasis added)).

Pages 1 and 2 of the March 2014 trial plan list steps to be taken to complete the trial plan period including as follows:

**Step 1: To Stop the Foreclosure Process (Suspension of Foreclosure)**

In order for us to delay referring your mortgage to foreclosure, or suspend foreclosure proceedings if your loan has been referred to foreclosure:

• You may make your first trial period payment by 4/1/2014, which may be earlier than the scheduled due date described below and we will stop the foreclosure process. . . .

**Step 2: To Accept This Offer**
You must make your first trial period payment by the first payment due date designated below . . . .

**Step 3: Make Trial Period Payments**
To successfully complete the trial period plan, you must make the trial period plan payments below.
• First payment: $ 1,583.31by4/1/2014
• Second payment: $ 1,583.31 by 5/1/2014
• Third payment: $ 1,583.31by6/1/2.014 . . . .

*Next Steps* . . . .

• Once you have successfully made each of the payments above by their due dates, you have submitted the required signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement. . . .

• If you have not been evaluated for eligibility for a modification under the federal Home Affordable Modification Program (HAMP) and you return a complete Borrower Response Package that we previously sent to you no later than 4/1/2014, we may be able to offer you a HAMP modification with a lower monthly principal and interest payment than what we estimate you would receive for the proposed modification described above.

• Please note that except for your monthly mortgage payment amount during the trial period, the terms of your existing note and all mortgage requirements remain in effect and unchanged during the trial period.

(Id. at 42-43).

Finally, under the question and answer section and "additional trial period plan information and legal notices," the following information appears:

> **Q. Why is there a trial period?**
>
> The trial period offers you immediate payment relief and gives you time to make sure you can manage the estimated new monthly mortgage payment. The trial period is temporary, and your existing loan and loan requirements remain in effect and unchanged during the trial period.
>
> **Q. When will I know if my loan can be modified permanently and how will the modified loan balance be determined?**
>
> Once you make all of your trial period payments on time and return to us the required copies of a modification agreement with your signature, we will sign one copy and send it back to you so that you will have a fully executed modification agreement detailing the terms of the modified loan. Any difference between the amount of the trial period payments and your regular mortgage payments will be added to the balance of your loan along with any other past due amounts as permitted by your loan documents. While this will increase the total amount that you owe, it should not significantly change the amount of your modified mortgage payment. . . .
>
> **Q. Will my interest rate and principal and interest payment be fixed after my loan is permanently modified?**
>
> If your loan is permanently modified as described above under the proposed modification terms, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage. However, if you return a complete Borrower Response Package that we previously sent to you no later than 4/1/2014, and we are able to offer you a HAMP modification, your interest rate will change after the first five years, as described in the HAMP modification agreement. . . .
>
> **Your current loan documents remain in effect; however, you may make the trial period payments instead of the payments required under your loan documents.**
>
> • You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

(Id. at 44-45).

Plaintiff timely made the three trial payments, and, in May 2014, plaintiff received from defendant a "loan modification agreement," including the following provision: "Borrower promises

to pay the Unpaid Principal Balance, plus interest . . . at the yearly rate of 4.625%." (Compl. (DE1-1) ¶¶ 40-42; Ex. 13, pgs. 54-73). The signature pages for the loan modification agreement include spaces for plaintiff and defendant to sign with the following found at the end of each signature line: "(Seal)." (Compl. (DE 1-1), Ex. 13, pgs. 66-67).

## COURT'S DISCUSSION

A. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To meet this standard, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Courts must liberally construe pro se complaints, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, courts "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loans Servicing, LP, 867 F.Supp.2d 766, 776 (E.D.N.C. 2011). "The 'special judicial solicitude' with which a district court should view such

pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs. for the City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990).

B.  Analysis

As stated above, plaintiff asserts the following causes of action: 1) wrongful initiation of foreclosure proceedings, 2) wrongful refusal to accept offer of tender, 3) breach of contract, and 4) failure to provide 45-day pre-foreclosure notice. The court will address each of plaintiff's four causes of action in turn below.

    1.    First Cause of Action: "Wrongful Initiation of Foreclosure Proceedings"

Neither the North Carolina Court of Appeals nor the Supreme Court of North Carolina has recognized a claim for "wrongful initiation of foreclosure proceedings," and this court declines to do so. See Gilbert v. Deutsche Bank Tr. Co. Americas, No. 4:09-CV-181-D, 2015 WL 9200417, at *1-2 (E.D.N.C. Dec. 16, 2015) (reviewing North Carolina Supreme Court and Court of Appeals decisions, holding "this court predicts that the Supreme Court of North Carolina would not recognize plaintiffs' claim in count four for attempted wrongful foreclosure. See, e.g., In re Residential Capital, LLC, 501 B.R. 531, 540-42 (Bankr. S.D.N.Y. 2013) (analyzing the Gilberts' attempted wrongful foreclosure claim against GMAC Mortgage, LLC, arising from the same series of transactions at issue in this case and concluding that no such cause of action exists under North Carolina law)."); see also Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 315 (4th Cir. 2007) ("We conclude accordingly that as a court

8

sitting in diversity, we should not create or extend the North Carolina common law . . . .").[2]

However, plaintiff's first cause of action can be construed as asserting claims for breach of contract, fraud, and statutory violations arising from the June 2013 trial plan and related to defendant's 1) commencement of the Dare County foreclosure proceedings in July 2013 and 2) failure to modify plaintiff's mortgage in accordance with the June 2013 trial plan. (Compl. (DE 1-1) ¶¶ 8-20 (citing 4 N.C. Admin. Code 3M.0703)).

All of these potential claims, breach of contract, fraud, and statutory violations with no prescribed limitations period, have three year statutes of limitations. See N.C. Gen. Stat. § 1-52(1), (2), (9). The statute of limitations begins to run when the plaintiff's right to maintain an action accrues. Thurston Motor Lines, Inc. v. Gen. Motors Corp., 258 N.C. 323, 325(1962). More specifically, "[a] cause of action for a suit involving a breach of contract accrues as of the date of breach." MacDonald v. Univ. of N. Carolina at Chapel Hill, 299 N.C. 457, 463 (1980). A cause of action for fraud accrues on the date the plaintiff actually discovered the alleged fraud, or reasonably should have discovered it in the exercise of due diligence. Vail v. Vail, 233 N.C. 109, 116 (1951).[3]

---

[2] Plaintiff asserts a claim of "wrongful initiation of foreclosure proceeding," but does not appear to assert a claim of wrongful foreclosure, notwithstanding a brief but somewhat unclear allegation, made by plaintiff in plaintiff's opposition to defendant's motion to dismiss, that on January 16, 2018, Dare County Superior Court "allowed sale of the house" and appeal of that ruling is currently pending. (See DE 19 at 7; id. at 9 ("Since this is not a foreclosure proceeding . . . this is a suit for damages for fraud, deceit, misrepresentation, and breach of contract")); see also Porterfield v. JP Morgan Chase Bank, Nat. Ass'n, No. 4:13-CV-00128-BO, 2013 WL 5755499, at *2 (E.D.N.C. Oct. 23, 2013) ("A claim for wrongful foreclosure is 'based on fraud' and 'accrues when the mortgagee conveys the property to a third party.'"). Plaintiff has not alleged that the property at issue has been sold in a foreclosure sale; plaintiff does allege that he is the current owner of the property. (See Compl. (DE 1-1) ¶ 2).

[3] Plaintiff additionally alleges violations under 1) the following provisions of Chapter 45 of the North Carolina General Statutes, see North Carolina Gen. Stat. §§ 45-21.16 ("Notice and Hearing"); 45-93 ("Borrower Requests for Information"); 45-102 ("Pre-Foreclosure Notice for Home Loans"); and 45-107 ("Foreclosure Filing"), 2) the North Carolina SAFE Act, see North Carolina Gen. Stat. §§ 53-244.111(21)-(22) ("Prohibited Acts," as applied to a mortgage servicer), and 3) pursuant to administrative rules promulgated under the provisions of the SAFE Act, see 4 N.C. Admin. Code 3M.0702 ("Requirements for Mortgage Servicers to Communicate Effectively with Borrowers Regarding Loss Mitigation"); 4 N.C. Admin. Code 3M.703 ("Cessation of Foreclosure Activity During Pendency of Loss Mitigation Request"). To the extent a private right of action for enforcement of these provisions exist, see, e.g., North Carolina Gen. Stat. § 45-94 ("In addition to any equitable remedies and any other remedies at law, any borrower injured by any

9

All of the alleged misconduct by defendant found in plaintiff's first cause of action occurred in 2013, well over three years before this action was commenced, on January 12, 2018, and are barred by the applicable statue of limitations.

Plaintiff argues that his claims are not barred because 1) "the foreclosure proceedings instituted in July, 2013 tolled the applicable three year statute during the pendency of the ensuing judicial proceedings," which were not terminated until at least January 16, 2018, when the Dare County Superior Court allowed the sale of the house, and 2) statute of limitations are not deemed to accrue until discovery by the aggrieved party of the facts constituting the claims. (DE 19 at 7).

First, plaintiff cites no authority, and the court is aware of none, applicable to the facts as represented in this case, wherein the statute of limitations for plaintiff's claims for breach of contract, fraud, and statutory violations are tolled by the pendency of state court foreclosure proceedings. Second, plaintiff was aware of all facts constituting his claims well before January 2015, three years prior to the commencement of this action. Plaintiff's injuries would have been apparent prior to January 2015 regarding both the commencement of the Dare County foreclosure proceedings in July 2013 and failure to modify plaintiff's mortgage pursuant to the June 2013 trial plan. See Pembee Mfg. Corp. v. Cape Fear Const. Co., 313 N.C. 488, 493 (1985) ("[A]s soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run. It does not matter that further damage could occur; such further damage is only aggravation of the original injury.").

---

violation of this Article may bring an action for recovery of actual damages, including reasonable attorneys' fees"); Gardner v. Bank of New York Mellon, No. 5:13-CV-00471-FL, 2014 WL 12623069, at *4 (E.D.N.C. Feb. 24, 2014) ("As several courts already have noted, the SAFE Act does not create a private right of action"), such causes of action would accrue "as soon as the right to institute and maintain a suit arises." Penley v. Penley, 314 N.C. 1, 20 (1985) (citations omitted); Acts Ret.-Life Communities, Inc. v. Town of Columbus, 789 S.E.2d 527, 530 (N.C. Ct. App. 2016) (same).

Accordingly, the court dismisses plaintiff's first cause of action as barred by the statute of limitations.

2. Second Cause of Action: "Wrongful Refusal to Accept Offer of Tender"

Plaintiff's second cause of for alleged wrongful refusal to accept tender is construed as claims for breach of contract and statutory violation arising from defendant's alleged 1) refusal to accept funds in February 2014 and 2) refusal to timely and properly respond to plaintiff's requests for a current balance as to his loans. (Compl. (DE 1-1) ¶¶ 21-37 (citing North Carolina Gen. Stat. §§ 45-93, 53-44.111(21), 244-111(21);4 N.C. Admin. Code 3M.0702)).

Plaintiff's second cause of action is also barred by the statute of limitations. Plaintiff's argument that the statute of limitations are not deemed to accrue until discovery by the aggrieved party of the facts constituting the claims, (DE 19 at 7), is equally unavailing here. Plaintiff was fully aware of defendant's refusal to accept funds and refusal to timely and properly respond to plaintiff's requests for a current balance as to plaintiff's loans when these events occurred in February 2014, well over three years before this action was commenced.

Accordingly, the court dismisses plaintiff's second cause of action as barred by the statute of limitations.

3. Third Cause of Action: "Breach of Contract"

Plaintiff's third cause of action asserts a breach of contract claim arising from defendant's alleged failure to offer a permanent modification as outlined in the March 2014 trial plan. (Compl. (DE 1-1) ¶¶ 38-42).

Plaintiff argues his claim is not barred by the statute of limitations and is "revived" on the grounds of fraud or mistake as evidenced by plaintiff's receipt of letter from the North Carolina

Commissioner of Banks dated November 27, 2017 stating the March 2014 trial plan contained an error. (DE 19 at 8 (citing DE 19-9 at 1 ("Due to a system error, the 'Proposed Terms' of a 2.00% interest rate over 40 years were reflected on the agreement. However, the terms reflected on the TPP agreement are the proposed terms; the final modified terms, as well as the capitalized amounts for unpaid principal and escrow, are provided in the final modification documents."); N.C. Gen. Stat. § 1-52(9) (providing for a three year statute of limitations for "relief on the ground of fraud or mistake," with the cause of action accruing upon "the discovery by the aggrieved party of the facts constituting the fraud or mistake." )). Plaintiff states that "[a]t no time prior to November 27, 2017, did [defendant] ever state their June, 2014 trial modification loan offer was made in error or mistake." (Id.). In sum, plaintiff argues that because plaintiff received a letter within the statute of limitations period stating that the March 2014 trial plan contained an error as to the interest rate offered, plaintiff's claim for breach of contract relating to the March 2014 trial plan is not barred by the statute of limitations due to N.C. Gen. Stat. § 1-52(9).

The court need nor resolve this issue because even if the court assumed that plaintiff's claim is not barred by the statute of limitations, no valid contract exists between the parties, and plaintiff's claim fails.

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted). To constitute a valid contract, "the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms." Boyce v. McMahan, 285 N.C. 730, 734 (1974) (quotations omitted); see Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679 (1961) ("[I]t is necessary that the minds of the parties meet upon a definite

12

proposition. There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense."). Additionally, where a party seeks to enforce "[a] contract to enter into a future contract," that contract "must specify all its material and essential terms. . . ." Boyce v. McMahan, 285 N.C. 730, 734 (1974). "If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." Id.

"Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Phillip Morris USA Inc., 363 N.C. 623, 631 (2009) (internal citation and quotation omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693–94 (1949). "Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976).

The March 2014 trial plan did not create an enforceable agreement wherein defendant was obligated to provide plaintiff a loan modification with an interest rate of 2.000%. Although the March 2014 trial plan states that if plaintiff makes the required payments, modification of his loan will occur with an interest rate of 2.000%, the March 2014 trial plan additionally states the terms of the modification as found in the March 2014 trial plan are an estimate. (See Compl. (DE 1-1) Ex. 11, pg. 43 ("we may be able to offer you a HAMP modification with a lower monthly principal and interest payment than what we estimate you would receive for the proposed modification described above); id. at 44 ("The trial period . . . gives you time to make sure you can manage the estimated new monthly mortgage payment")). The March 2014 trial plan also makes clear that multiple steps

13

must be completed before plaintiff would receive a proposed loan modification agreement, and thereafter further steps would be required before that proposed loan modification agreement went into effect and became a permanent loan modification. (See id. at 43 ("Once you have successfully made each of the payments above by their due dates, you have submitted the required signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement."); 44 ( "Q. When will I know if my loan can be modified permanently and how will the modified loan balance be determined?" (emphasis added)).

Additionally, the March 2014 trial plan states repeatedly that the "terms of your existing note and all mortgage requirements remain in effect and unchanged during the trial period." (id. at 43; see also id. at 45 ("You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.")).

Finally, the essential terms of the loan modification agreement were not specified in the March 2014 trial plan. First, while an interest rate of 2.000% and "40-year term" are both specified, the interest rate is subject to change if plaintiff submitted documentation for evaluation under HAMP and the beginning of the 40-year term begins "the date the modification is effective," with no timeline specified for when the permanently modified loan would begin amortizing. (Id. at 42-44). Second, the actual monthly payments were not finalized in the March 2014 trial plan. The post-modification interest-bearing principal balance is unknown, and depending on the value of the home and the ultimate pre-modification principal balance, 30% of that pre-modification balance

14

could be deferred and non-interest-bearing, according to the March 2014 trial plan. (Id. at 42). Additionally, the March 2014 trial plan provides that "[a]ny difference between the amount of the trial period payments and your regular mortgage payments will be added to the balance of your loan along with any past due amounts," which would increase both "the total amount that you owe" and "the amount of your modified mortgage payment," although the March 2014 trial plan also states the total amount owed "should not significantly change the amount of your modified mortgage payment." (Id. at 44). Those regular modified payments would include escrow amounts, which are subject to change. (Id.).

In sum, the loan modification agreement states its proposed terms are an estimate, provides for steps to be taken prior to the offer of a permanent loan modification offer, confirms all existing terms remain in effect, and does not specify the essential terms of the permanent loan modification. Defendant sent to plaintiff a proposed permanent modification offer after the completion of the trial period. Where the loan modification agreement requires no additional conduct on the part of defendants in issue here, plaintiff's claim for breach of contract of the loan modification agreement fails.[4] See Moore v. Seterus, Inc., No. 4:16-CV-293-FL, 2017 WL 3496485, at *2 (E.D.N.C. Aug. 15, 2017) (holding same regarding substantially similar loan modification offer).[5]

---

[4] Additionally, plaintiff submits to the court, attached to his opposition to motion to dismiss, an edited copy of the loan modification agreement signed by plaintiff and sent to defendant but not signed by defendant. (See Compl. (DE1-1), Ex. 13, pgs. 54-73; DE 19-7 at 1-18 (includes plaintiff's signature and edits made by plaintiff's counsel, including modifying the yearly interest rate from 4.625% to 2.000%)). This edited loan modification also does not create an enforceable agreement wherein defendant was obligated to provide plaintiff a loan modification with an interest rate of 2.000%, notwithstanding plaintiff's allegations in his opposition to defendant's motion to dismiss that plaintiff was authorized to edit the document by an employee of defendant. (See DE 19 at 12); see also Crosby, 635 F.3d at 645; Boyce, 285 N.C. at 734; Horton, 255 N.C. at 679.

[5] Given the court's holding above, it is unnecessary to address defendant's argument that the statute of frauds precludes the March 2014 trial plan from modifying plaintiff's loan. (See DE 8 at 19). Similarly, it is unnecessary to address plaintiff's argument that the three year statute of limitations does not apply to this claim because the loan modification agreement sent to plaintiff in May 2014 was prepared under seal. (See Compl. (DE1-1), Ex. 13, pgs. 54-73; Ex. 11, pgs. 42-45; DE 19 at 7). Regarding the latter argument, however, the court notes that no document has been

Accordingly, the court dismisses plaintiff's third cause of action for failure to state a claim.

4.      Fourth Cause of Action: "Failure to Provide 45-Day Pre-Foreclosure Notice"

Plaintiff's fourth cause of action for failure to provide pre-foreclosure notice asserts a claim for statutory violation arising from defendant's failure to send plaintiff a required notice before July 2013. (Compl. (DE 1-1) ¶¶ 43-47 (citing North Carolina Gen. Stat. §§ 45-102, 45-107(a), 45-21.16, 53-244.111(22))). This claim is barred by the statute of limitations. As with plaintiff's first and second causes of action, plaintiff's argument that statute of limitations are not deemed to accrue until discovery by the aggrieved party of the facts constituting the claims, (DE 19 at 7), is unavailing. Plaintiff would have known at the latest that defendant failed to provide a pre-foreclosure notice when plaintiff discovered that defendant had begun foreclosure proceedings in July 2013, well over three years before this action was commenced.

Accordingly, the court dismisses plaintiff's fourth cause of action as barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (DE 7) is GRANTED. The clerk is DIRECTED to close the case.

SO ORDERED, this the 18th day of July, 2018.

LOUISE W. FLANAGAN
United States District Judge

---

signed under seal by both parties; accordingly, there is no agreement considered to be a "sealed instrument" within the meaning of the applicable North Carolina statute. See N.C. Gen.Stat. § 1–47(2); Central Systems, Inc. v. General Heating & Air Conditioning Co. of Greenville, Inc., 268 S.E.2d 822, 824 (N.C.Ct.App. 1980) (citing Bank of N.C., N.A. v. Cranfill, 253 S.E.2d 1 (N.C. 1979)).